No. 6.—Zebulon B. Craig, plaintiff in error, vs. Madison L. Adair, defendant in error.

[1.] If a *fi. fa.* has been issued it must be returned before the Clerk can issue a *ca. sa.*

[2.] In an action against a public officer for the recovery of damages for breach of duty, it is no error for the Court to charge the jury, in the absence of proof of breach of duty, that they could not presume damages had been done the plaintiff.

Case, in Gwinnett Superior Court. Tried before Judge Cabiness, at March adjourned Term, 1857.

This was an action on the case brought by Craig against Adair, Clerk of the Superior Court of Gwinnett county, to recover damages alleged to have been sustained by neglect and refusal of defendant to issue a *ca. sa.* when requested by plaintiff.

The declaration averred that one George W. Ambrose, obtained judgment in the Superior Court of said county, against one Daniel H. Rutan as maker, and plaintiff as indorser of a note for the sum of sixty dollars, besides interest and cost. That a *fi. fa.* issued thereon; that afterwards Rutan being about to leave the State, plaintiff requested defendant as Clerk aforesaid, to issue a *ca. sa.*, which he failed and refused to do, and that Rutan afterwards left, without discharging said judgment, and plaintiff had to pay the same, whereby he was damaged to the amount of one hundred dollars.

Defendant pleaded:

1st. The general issue.

2d. That the *fi. fa.* which had been issued in the case, had not been returned to his office at the time of the alleged request to issue the *ca. sa.*

3d. That defendant is liable for neglect of official duty, only by suit on his official bond.

4th. That plaintiff in said *fi. fa.* has long since been fully

paid, and that plaintiff never ordered a *ca. sa.*, after he had a right to control said *fi. fa.*

Plaintiff introduced the following testimony, to-wit:

The *fi. fa.* in favor of George W. Ambrose against Daniel H. Rutan maker, and Z. B. Craig indorser: principal $60. Judgement entered 16th September, 1853. *Fi. fa.* issued 5th October, 1853, with an entry of *nulla bona*, 25th November, and the payment of the same by Craig, the plaintiff.

*George W. Ambrose*, testified, that he went to defendant a few days before Rutan ranaway and requested him to issue a *ca. sa.* against him; defendant replied, why don't you make your money out of Craig; he has got property here, a house and lot, &c. Witness said it was doubtful whether Craig had property, and he thought the titles to said lot were in some one else; and that not only he, but Craig wanted the *ca. sa.* to issue; that Rutan left for parts unknown in a few days after, and witness thought that if a *ca. sa.* had been issued, he could have got the money out of him.

*P. S. Sterling*, testified, that a short time before Rutan left, he held a demand of seventeen dollars against him, and he let him have a pony for his debt, which he afterwards sold without seeing it, for the amount of his demand; did not think Rutan had then much property, or but little if any that could be levied on; had property some two or three years previous.

*Zimriah Brooks*, testified, that Rutan left this country the Saturday night before the first Tuesday in March, 1854.

Defendant introduced *T. L. Graves*, who testified that he arrested Rutan, a short time before he left, under a *ca. sa.* for seven or eight dollars; did not take any bond from him, let him go at large to get security, and he wanted him a few days afterward to serve some notices of his intention to take the benefit of the insolvent debtor's Act: that he would not let witness come near him, as he was expecting a *ca. sa.* in favor of Ambrose to come against him every day; did not

Craig vs. Adair.

think he had property to levy on at that time, but had property two or three years before.

Here defendant rested.

The Court charged the jury:

1st. That it was illegal for the defendant while Clerk, to issue a *ca. sa.*, and he was not bound to do so, until the *fi. fa.* was returned to office, and the jury were to determine from the evidence, whether the *fi. fa.* had been returned to the Clerk when he was requested to issue the *ca. sa.*

2d. The Court charged the jury that the plaintiff was only entitled to recover the actual damages proved, and they could not presume damages, but must look to the evidence to ascertain the damages sustained by plaintiff.

To which charge, counsel for plaintiff excepted.

The jury found for the defendant, and counsel for plaintiff moved for a new trial, on the grounds, that the charge of the Court was erroneous, and that the verdict was contrary to law and evidence.

The Court overruled the motion for a new trial, and counsel for plaintiff excepted.

HULL; and GLENN, for plaintiff in error.

PEEPLES, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

[1.] The first assignment of error is on the charge of the Court to the jury, that the Clerk, who was defendant in this case, could not have legally issued a *ca. sa.* against the body of the defendant, until the writ of *fi. fa.* which had been issued against his property, was returned to office. This charge is unquestionably correct. In case one execution prove ineffectual, another may be sued out; but there ought not to be two executions, one against the body and another against the property, at the same time. If a *fieri facias* has been issu-

ed, and the party wish a *ca. sa.*, the Sheriff ought to return the *fi. fa.* 1. *Sellon's Pr.* 535. Our statute directs that if a *ca. sa.* has been issued against a defendant, he may point out property and give security that it is *bona fide* his, and subject to the payment of the debt, and it shall then be the duty of the Sheriff to return the execution against the body and take out an execution against the property of the defendant. This is a legislative construction that there cannot be two executions, one against the body and another against the property, proceeding form the same debt against the same defendant, at the same time. We think the charge of the Court was strictly legal on this point.

[2.] The charge of the Court on the subject of damages, must be considered in reference to the pleadings and the evidence in the case. It would not have been proper for the Court to have charged the jury on a state of things neither alleged nor proved. The *fi. fa.* was issued on the fifth of October, 1853. It was made returnable to the next Court to sit on the second Monday in March, 1854. An entry of *nulla bona* is indorsed on the *fi. fa.*, bearing date on the 25th of November, 1853, but it does not appear when it was returned. There is no allegation of its return in the declaration. Before the first Tuesday in March, 1854, the defendant, Rutan, ranaway, and it was a few days before that, that the plaintiff, Ambrose, asked the Clerk to issue a *ca. sa.* When a plaintiff sues an officer for a breach of duty, it is necessary for him to prove every fact necessary to constitute that breach of duty. There was no proof of the return of the *fi. fa.*, and the law will not presume its return prior to the Term of the Court to which it was made returnable. From the facts proven, there was no breach of duty, and without a breach of duty by the officer, damages will not be presumed. If the plaintiff had sustained actual damages by the defendant's failure to issue the *ca. sa.*, it is his own fault. The Sheriff was not bound, without demand, to return the execution before the return Term; the Clerk could not have issued the *ca.*

*sa.* before its return, but the plaintiff might have required the Sheriff to return the *fi. fa.* to the office for the purpose of obtaining a *ca. sa.* This he did not do.

It is not necessary to consider whether this plaintiff could have a right of action in this case, even if the *fi. fa.* had been returned and the Clerk had refused to issue the *ca. sa.* on demand. He was a security, and if he had paid the debt and taken the control of the execution at the time the *ca. sa.* was applied for, he could have controlled the judgment and execution against the property only of his principal.

From what we have said, it will be seen that the motion for the new trial ought not to have prevailed.

Judgment affirmed.